# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01422-COA

**THE ESTATE OF TOMMY ELLIS**                                      **APPELLANT**

**v.**

**MMC MATERIALS, INC. AND VICTOR BAKER**                   **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/2019 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN T. BALL |
| | STEPHANIE HUGHES BAIRD |
| ATTORNEYS FOR APPELLEES: | MICHAEL WAYNE BAXTER |
| | MICHAEL MADISON TAYLOR JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 02/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     The Estate of Tommy Ellis (the Estate) appeals from the Jefferson County Circuit Court's order granting summary judgment in favor of MMC Materials Inc. (MMC Materials), Victor Baker, John Doe Entities 1-5, and John Doe Persons 1-5 (collectively, the Appellees). In granting summary judgment, the trial court found that the Estate failed to produce evidence showing that the Appellees proximately caused Tommy Ellis's injury or death.

¶2.     After our review, we agree that the Estate failed to meet its burden of proving sufficient evidence in support of an essential element of its negligence claim—proximate cause—and we find that summary judgment was proper. We therefore affirm the trial court's

judgment.

## FACTS

¶3.    Roosevelt Buie hired Tommy Ellis to build a carport on his residence.  Ellis ordered concrete from MMC Materials to use to pour a concrete slab for the carport.  Ellis instructed MMC Materials to deliver the concrete to the job site at Buie's residence.  On March 26, 2014, MMC Materials dispatched one of its truck drivers, Victor Baker, to deliver the concrete to Ellis.

¶4.    Baker testified that when he arrived on the job site, Ellis asked him to exit the mixer truck and determine if Baker could maneuver the mixer truck next to the slab where Ellis wanted to pour the concrete.  Baker testified that at this time, he smelled alcohol on Ellis. Baker informed Ellis that he could "get in there," so he backed the mixer truck up next to the slab.  Baker then placed the concrete chute on the mixer truck.  At this time, the concrete chute was locked.  Baker stated that Ellis then said, "Let me see the mud," so he let Ellis view the concrete.  According to Baker, when Ellis viewed the concrete, it was too stiff. Baker testified that Ellis instructed him to unlock the chute, and Ellis pulled the chute toward him.[1]  Baker testified that Ellis had both of his hands on the chute at that time and that Ellis "had control of the chute."  According to Baker, Ellis then instructed him to "[g]ive me 20

_____

[1] During his deposition, Baker explained that Ellis wanted him to unlock the concrete chute so that the stiff concrete would not pile up.  Baker further explained that Ellis then pulled the chute toward him to spread the concrete to thin it out and prevent the formation of a big pile of concrete.

2

gallons" of water to dilute the concrete. Baker stated that when he turned around to turn on the water, he heard "some noise." Baker explained that in order to turn on the water, he had to have his back turned to Ellis. Upon hearing the noise, Baker turned around to face Ellis and saw that Ellis had fallen. Baker stated that Ellis "was pulling [the chute] toward him" when he stumbled and fell. Baker clarified that because his back was to Ellis, he did not see Ellis fall, but he "heard it."

¶5. After Ellis fell, Baker testified that he locked the concrete chute and physically picked Ellis up and carried him to the driver's side of Ellis's vehicle. Baker observed Ellis reach under the passenger side seat and "grab[] a bag which looked like a quart of beer" and begin to drink. Baker observed that the bag also smelled like it contained beer. Baker testified that he knew that if Ellis "was on his own job, most of the time he's going to have something to drink."

¶6. After helping Ellis to his vehicle, Baker then poured the concrete for Ellis. Baker stated that he saw Ellis leave the job site, but he did not know where Ellis went. Baker testified that Ellis later returned to the job site with his leg wrapped in a bandage, and Ellis tried to pour the concrete. During that time, Baker inquired as to how Ellis was doing, and Ellis told him that he "was okay."

¶7. Buie testified that the security camera installed in the back of his house captured footage of the incident. Buie stated that although he was not home at the time and did not

3

witness Ellis fall, he viewed the footage of the incident on his phone.[2] Buie explained that upon watching the video, he "couldn't really make . . . out" what caused Ellis to stumble and fall, stating, "All I know is he was standing beside the chute and just hollered and went down. I couldn't tell how it happened." Buie testified that he observed Ellis's hands on the concrete chute the entire time.

¶8. Ellis's daughters, Shaquita Clark and Belinda Combs, both testified that they were not present at the job site and did not witness the incident. Clark and Combs also testified that they did not have personal or firsthand knowledge of why or how Ellis fell.

¶9. Alonzo Evans, the plant manager at MMC Materials, testified that MMC Materials is responsible for safely delivering concrete to job sites and for the safety of their vehicles, but they are not responsible for the safety of the person holding the concrete chute.

¶10. The record reflects that as a result of his fall, Ellis suffered a tibial plateau fracture in his right leg.[3] According to the Appellees, Ellis went to the hospital to receive treatment for his injury. Ellis was then fitted with a leg cast and instructed to wear the cast for several weeks. The Appellees assert that Ellis failed to comply with medical advice and removed his cast early and walked on his injured leg. As a result, Ellis suffered "a displaced fracture

---

[2] The record reflects that Buie's camera synced with his phone, which allowed him to use his phone to view footage filmed by the camera. Regarding the video of the incident at issue before us, Buie testified that he somehow erased or recorded over the video, and he could not produce it.

[3] The only actual medical evidence in the record is that from Ellis's visit to the emergency room at Jefferson County Hospital Emergency on the date of his injury (March 26, 2014).

of the injured bone that then required a surgery." The Appellees claim that after surgery, Ellis again failed to follow medical advice by refusing to stay in the hospital or take antibiotics to prevent an infection of the surgical wound. Ellis's leg subsequently became infected and required amputation. The Appellees state that Ellis again refused to be hospitalized or comply with doctors' orders. Ellis then developed sepsis and died.

¶11. On January 6, 2017, the Estate filed a complaint against the Appellees and asserted a wrongful-death claim. In the complaint, the Estate alleged that Ellis's wrongful death was a direct and proximate result of the Appellees' negligence. In support of its claim, the Estate alleged that Baker owed Ellis the following duties:

(a) The duty to have kept such lookout as an ordinary and prudent person would have kept for his safety and the safety of other persons under the conditions existing immediately before and at the time and place of said accident[;]

(b) The duty to maintain proper control of his motor vehicle at all times and thus avoid injuring others or damaging their property; . . .

(c) The duty to have made a reasonable effort to have operated his vehicle in a manner that would not have caused his concrete mixing truck to strike [Ellis]; and

(d) The duty to operate his vehicle in a careful, cautious, and prudent manner.

¶12. The Appellees filed a motion for summary judgment and argued that "[b]ecause [the Estate] has no evidence whatsoever to show that the [Appellees] proximately caused Ellis to fall, or that the [Appellees] breached any duty owed to Ellis, the [Appellees] are entitled to summary judgment." The Appellees attached the following documents in support of their

5

motion: the complaint; the Appellees' answer and affirmative defenses; excerpts from the depositions of Baker, Buie, Clark, and Combs; and a photograph of the mixer truck.

¶13. The Estate filed a response in opposition to the Appellees' motion for summary judgment. In its motion, the Estate asserted that the circumstantial evidence and reasonable inferences derived from that evidence created a factual basis for a jury to find negligence on behalf of the Appellees. The Estate argued that "[n]egligence may be inferred from all the facts and attendant circumstances so long as they do not fall within the realm of conjecture and fall within the field of legitimate inference from established facts." The Estate claimed that "[t]he legitimate inference derived from the facts in this case is that Victor Baker . . . released too much cement and/or water from the cement truck into the chute, causing the chute to become unstable and causing [Ellis's] subsequent fall." The Estate also asserted that MMC Materials was negligent "on the basis of the failure of the cement truck to have proper safety devices, including mirrors, that would alert the operator to any sudden emergencies, such as occurred in this case[.]" In addition to the documents identified by the Appellees in their motion for summary judgment, the Estate attached the following documents in support of their opposing motion: Evans's deposition and Ellis's hospital emergency-room records from the date of the incident.

¶14. After a hearing on the matter, the trial court entered an order granting the Appellees' motion for summary judgment. The trial court found that the Estate failed to offer any evidence in support of its claim that the Appellees proximately caused Ellis's injury. The

6

trial court explained that "[w]ithout proof that the negligence of the [Appellees] were the cause in fact and legal cause of [Ellis's] alleged injury, the [Appellees] cannot be held liable." The trial court recognized that the element of causation "is generally a question for the jury," but it found "that the [Estate] has not submitted sufficient evidence to take the case out of the realm of conjecture and place it within the field to support a legitimate inference of liability."

¶15. The Estate now appeals from the trial court's order granting summary judgment.

## STANDARD OF REVIEW

¶16. We apply a de novo review to a trial court's grant of summary judgment. *Burns v. Gray*, 270 So. 3d 1084, 1088 (¶13) (Miss. Ct. App. 2018). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting *Amfed Nat'l Ins. Co. v. NTC Transp. Inc*., 196 So. 3d 947, 953 (¶18) (Miss. 2016)). "This Court must view the evidence in the light most favorable to the party against whom the motion has been made." *Id*.

¶17. As the party opposing summary judgment in this matter, the Estate "may not rest upon mere allegations or denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. The Estate must support its claim "by more than a mere scintilla of colorable evidence; it must be evidence upon which a

7

fair-minded jury could return a favorable verdict." *Id.* (quoting *Van v. Grand Casinos of Miss. Inc.*, 767 So. 2d 1014, 1018 (¶7) (Miss. 2000)). "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Knox v. Mahalitc*, 105 So. 3d 327, 328-29 (¶6) (Miss. Ct. App. 2011) (quoting *Buckel v. Chaney*, 47 So. 3d 148, 152 (¶10) (Miss. 2010)).

## DISCUSSION

¶18.    On appeal, the Estate argues that the trial court erred by granting summary judgment in favor of the Appellees.  In support of its argument, the Estate asserts that the circumstantial evidence and the reasonable inferences from that evidence created a factual basis to allow a jury to find that the Appellees were negligent when Baker "released an excessive amount of cement and/or water from the cement truck into the chute, causing the chute to become unstable" and resulting in Ellis's injury and death.  The Estate also claims that Baker was negligent by turning his back to Ellis at the time he released the cement into the chute.  The Estate further asserts that MMC Materials possessed a duty to have proper safety devices in place on its vehicles for the protection of its customers, including rear-view mirrors.  The Estate argues that proper safety devices on the cement mixer would have alerted Baker to the "impending emergency that had been created when he allowed too much cement to flow into the chute."

¶19.    This Court has recognized that "[a] claim of negligence requires the plaintiff to prove by a preponderance of the evidence (1) duty, (2) breach of duty, (3) causation, and (4)

8

injury." *Burns*, 270 So. 3d at 1084 (¶14) (quoting *Rogers v. Barlow Eddy Jenkins P.A.*, 22 So. 3d 1219, 1222 (¶11) (Miss. Ct. App. 2009)). To survive summary judgment in a negligence action, the plaintiff bears the burden of providing "evidence showing that the defendant breached a duty of care and that the breach proximately caused [his] injury." *Id*. "Proximate cause requires: (1) cause in fact; and (2) foreseeability." *Id*. (quoting *Ogburn v. City of Wiggins*, 919 So. 2d 85, 91 (¶21) (Miss. Ct. App. 2005)). "Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred." *Id*.

¶20.     As stated, the Estate claims that the circumstantial evidence presented, together with the logical inferences arising therefrom, is sufficient to create a genuine issue of material fact for the jury as to whether the Appellees were guilty of negligence in connection with Ellis's fall and subsequent injury. The Estate maintains that the injury Ellis suffered from the fall resulted in his death. In support of its claim, the Estate argues that "[i]t is well settled in Mississippi law that circumstantial evidence of negligence can create a question of fact for the jury." (Citing *Kurn v. Fondren*, 189 Miss. 739, 198 So. 727, 730 (Miss. 1940)).

¶21.     We recognize that "the circumstantial-evidence doctrine allows the jury to draw an inference of the defendant's negligence[.]" *Lyon v. McGee*, 249 So. 3d 436, 444-45 (¶26) (Miss. Ct. App. 2018) (quoting *Walz v. HWCC-Tunica Inc.*, 186 So. 3d 375, 377 (¶12) (Miss. Ct. App. 2016)). "Circumstantial evidence is sufficient when it leads to an inference of negligence on behalf of one party." *Id*. (quoting *Walz*, 186 So. 3d at 378 (¶13). However,

"circumstantial evidence that still leaves many inferences available is not sufficient as proof for necessary elements of a claim." *Id*. When a plaintiff has provided "enough circumstantial evidence to take [its] claims out of the realm of 'mere conjecture' and plant them in the solid ground of 'reasonable inference,'" then summary judgment is not proper. *Patricola v. Imperial Palace of Miss. LLC*, 235 So. 3d 214, 217 (¶11) (Miss. Ct. App. 2017) (quoting *Buckel*, 47 So. 3d at 156 (¶26)). We recognize that although "duty is an issue of law, and causation is generally a matter for the jury[,] . . . a plaintiff must still produce a genuine issue of material fact regarding causation in order to reach a jury." *Knox*, 105 So. 3d at 330 (¶12) (quoting *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (¶30) (Miss. 2004)).

¶22. In this case, we find that the record supports the trial court's finding that the Estate "has not submitted sufficient evidence to take the case out of the realm of conjecture and place it within the field to support a legitimate inference of liability." The trial court specifically found that the Estate offered no evidence to support its claim that Baker and/or MMC Materials were the proximate cause of Ellis's injury. The trial court determined that the deposition testimony reflected that "no one knows how Mr. Ellis fell or whether any equipment was negligently maintained or operated, which may have contributed to Mr. Ellis'[s] fall. Therefore, there is no circumstantial evidence from which jury could infer causation." Baker, who was present at the scene, and Buie, who observed footage of the incident on his phone, both testified during their depositions that they did not know how or

why Ellis fell. Ellis's daughters testified that they were not present during the incident and that they did not have firsthand knowledge of what caused Ellis to fall.

¶23. Our review of the record also reflects that the Estate failed to offer sufficient evidence in support of its claim that MMC Materials negligently maintained or operated its equipment in such a manner that resulted in Ellis's injuries and death. The Estate provided no evidence that the cement mixer at issue lacked any industry-required safety devices. The record also reflects that at the hearing on the summary judgment motion, the Estate informed the trial court that it had not designated any experts to testify as to any industry standards or safety devices on cement mixers. The Estate therefore failed to provide "enough circumstantial evidence to take [its] claims out of the realm of 'mere conjecture' and plant them in the solid ground of 'reasonable inference." *Patricola*, 235 So. 3d at 217 (¶11).

¶24. Viewing the evidence in the light most favorable to the Estate and giving it the benefit of all reasonable inferences from that evidence, we find that the evidence presented failed to create a genuine issue of material fact as to whether any alleged negligence by the Appellees was the proximate cause of Ellis's injury and death. Because the Estate failed to meet its burden of proving sufficient evidence in support of an essential element of its negligence claim—proximate cause—we find that summary judgment was proper. *See Knox*, 105 So. 3d at 328 (¶7) (quoting *Utz v. Running & Rolling Trucking Inc.*, 32 So. 3d 450, 466 (¶41) (Miss. 2010) ("[E]ven if a party is negligent, he is not liable to the plaintiff unless the negligence is 'the proximate cause of the injury.'")). We therefore affirm the trial court's

judgment.

¶25.    **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR.    McDONALD AND SMITH, JJ., NOT PARTICIPATING.**