ISHEE, J.,
for the Court:
¶ 1. James Barton Williams and Pamela Ann Talbot Williams (Williams) filed suit against C.E. Morrison[1] and Carla J. Morrison (Morrisons) in the Chancery Court of Lowndes County for a breach of contract for the sale of real estate. The Williamses’ amended complaint alleged fraud, intentional and/or negligent misrepresentation by the Morrisons in the sale of their home to the Williamses. The Morrisons filed a motion for summary judgment as to all claims, which was granted by the chancellor on May 1, 2006. Aggrieved, the Williamses appeal asserting that the chancellor erred in granting summary judgment for the Morrisons. Finding no error, we affirm.
FACTS
¶ 2. On August 4, 2003, the Morrisons listed their home, located at 428 Bent Tree Trail, Columbus, Mississippi, for sale with an agent and provided the agent with a “Property Condition Disclosure Statement.” On October 17, 2003, the Williamses made an offer to purchase the home as a contract for sale, along with an addendum to the contract that gave the Williamses the right to have the home inspected within seven days of acceptance of the contract. The terms of the addendum gave the Williamses the option to render the contract null and void if the inspection results were not acceptable. Therefore, pursuant to the agreed upon addendum, the Williamses hired, James Taylor, of RBI Inspectors, to perform an inspection of the property. After the Williamses received Mr. Taylor’s inspection report, they requested the Morrisons repair or correct “some, but not all,” of the items included on Mr. Taylor’s report. On November 3, 2003, the Williamses signed a removal of contingencies, and a few weeks later they signed a declaration of acceptance, on November 24, 2003, at the time of the closing.
¶ 3. The Williamses filed their breach of contract suit against the Morrisons on September 29, 2004, to which the Morri-sons filed a motion for a more definite statement. On January 20, 2005, the Williamses filed an amended complaint that alleged a breach of contract by intentional or negligent misrepresentation of the condition of the premises, a breach of the disclosure statement, and a breach of the fiduciary obligations of good faith and fair dealing. Specifically, the Williamses claimed that subsequent to the purchase of the home, they became aware of numerous structural problems, alterations, and/or renovations/remodels, as well as prior concealed flood damage to the garage, and numerous other problems which they *134 thought the Morrisons were under a duty to have disclosed.
¶ 4. Discovery ensued, and on January 25, 2006, the Morrisons filed a motion for summary judgment. A hearing was had on April 4, 2006, and on May 1, 2006, the court granted the Morrisons summary judgment and dismissed all claims against them brought by the Williamses. The Williamses properly filed their notice of appeal on June 28, 2006, after the court granted a motion to reopen the matter in order to file an appeal.
ISSUE AND ANALYSIS
I. Whether the court erred in granting summary judgment.
¶ 5. An appeal from summary judgment is reviewed de novo. Jacox v. Circus Circus Miss., Inc., 908 So.2d 181, 183(¶ 4) (Miss.Ct.App.2005) (citing Cossitt v. Alfa Ins. Corp., 726 So.2d 132, 136(¶ 19) (Miss.1998)). The standard by which we review the grant or denial of summary judgment is the same standard as is employed by the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. Jacox, 908 So.2d at 183(¶ 4) (citing Dailey v. Methodist Med. Ctr., 790 So.2d 903, 906-07(¶ 3) (Miss.Ct.App.2001)). Pursuant to Rule 56(c), summary judgment is appropriate when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.” The evidence must be viewed in the light most favorable to the non-moving party. Jacox, 908 So.2d at 184(¶ 4) (citing Dailey, 790 So.2d at 907(¶ 3)).
¶ 6. The Williamses allege that the Morrisons’ disclosure statement did not contain the true and accurate conditions of the property. Specifically, the allegation is based upon “Section E. Land and Site Data,” in which the Morrisons indicated that they were not personally aware of any flooding and/or standing water issues with the property. Dr. Morrison’s deposition testimony revealed that, at one point in time, a garden drain had gotten blocked with mulch, which caused rain water to enter the garage area. Dr. Morrison stated that he had vacuumed the water up within twenty-four hours and there had been no apparent water damage or standing water to his recollection. However, because of the Williamses’ discovery, after purchasing the property,[2] that there was “moisture damage and/or areas of old water penetration/seepage to the interior of the garage” they maintain that the Morrisons had personal knowledge of this fact and negligently and/or intentionally withheld this information. We disagree.
¶ 7. Additionally, the Williamses allege the Morrisons made misrepresentations of the property in “Section F. Additions/Remodels” of the disclosure statement. The Morrisons responded “yes” to the question and indicated they had remodeled the kitchen and added a family room and three-car garage. However, the Williamses assert that the Morrisons did not specifically reveal that they had installed “PVC piers” under the living area in an effort to correct a “vibration problem.” Subsequent to the Williamses’ purchase of the property, they had a professional engineer inspect the home and discovered the PVC piers, as well as possible future foundation issues with the home. However, *135 the engineer’s report noted that the installation of the PYC piers was not an attempt “to correct or improve the home’s foundation.” Regardless, the Williamses maintain that the Morrisons had personal knowledge of the foundation problems and the water problems that they discovered subsequent to their purchase of the property. Therefore, they claim the Morrisons intentionally and/or negligently misrepresented the condition of the property, specifically, on the disclosure statement. Again, we disagree with the Williamses’ allegations.
¶ 8. After a thorough review of the record before us and the arguments presented, we find that the Williamses have offered no evidence that the Morrisons intentionally misrepresented the condition of their property. The facts presented do not lead us to believe that the Morri-sons had any personal knowledge of the conditions discovered by the Williamses subsequent to their purchase. Dr. Morrison’s deposition testimony was that he had no personal knowledge of the conditions complained of by the Williamses or that any such problems existed during the years he and his family occupied the home. Mrs. Morrison’s testimony supported Dr. Morrison’s, in that she also had no personal knowledge of the conditions complained of by the Williamses. Additionally, the Williamses hired their own licensed inspector, Mr. Taylor, prior to the closing of sale, and pursuant to his recommendations, the Williamses were apparently satisfied enough with the conditions of the property to follow through with the contract and purchase the property. Mississippi Code Annotated section 89-1-501 (Rev.2006) requires that the disclosure statement be made. Additionally, section 89-1-505(1) states that the tránsferor shall not be liable “if the error, inaccuracy or omission was not within the personal knowledge of the trans-feror or that listing or selling agent ...” and section 89-1-509 establishes the format and contents required in the disclosure statement. In pertinent part the statement says “TO THE SELLER: Please complete the following form, including any past history of problems, if known.”[3] (emphasis added). Miss.Code Ann. §§ 89-1-505-509 (Rev.2006). Therefore, the seller is only under a duty to disclose information that he or she has personal knowledge of and cannot be held liable for defects or conditions that he or she was not personally aware of at the time of the sale. We find that the record does not present any set of facts that would support the Williamses’ allegations that the Morrisons were personally aware of the problems that arose subsequent to their purchase of the home and/or that the Morrisons attempted to misrepresent the condition of the property at the time of sale.
¶ 9. Furthermore, the Williamses had the property inspected by a licensed inspector of their choosing, and accepted and admittedly relied on his report to the extent that they chose to accept the contract and not exercise their right to render the contract void, as stated in the agreed upon addendum. In viewing the facts most favorably for the Morrisons, we find that the Williamses have not presented any genuine issue of material fact. The chancellor was not in error when he granted summary judgment to the Morrisons and dismissed all claims. This issue is without merit.
¶10. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS *136 OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Dr. Morrison passed away on February 11, 2007. Mrs. Morrison is a widow and the Estate of Dr. Morrison has been substituted as a party of record for the late Dr. Morrison.

. The Williamses’ complaint indicates that on or about December 2, 2003 a termite inspector informed them there was some moisture damage in the garage area, and there would continue to be problems, in his opinion, due to the fact the garage was constructed into a hillside.

. The disclosure statement provided by the Morrisons contained this language.