## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01713-COA

**ADAM LEWIS AND SHANNON LEWIS**                    **APPELLANTS**

**v.**

**RICHARD RULA AND CHERYL RULA**                    **APPELLEES**

DATE OF JUDGMENT:               11/13/2018
TRIAL JUDGE:                    HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:      MADISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:       CLYDE X. COPELAND
                                WILLIAM MATTHEW VINES
                                MATTHEW WILLIAM VANDERLOO
ATTORNEYS FOR APPELLEES:        DAVID BONDS ELLIS
                                DAVID W. MOCKBEE
NATURE OF THE CASE:             CIVIL - REAL PROPERTY
DISPOSITION:                    AFFIRMED - 03/24/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Richard and Cheryl Rula sought damages against Adam and Shannon Lewis in the amount of $235,000 due to the Lewises' failure to disclose known defects in the home they sold to the Rulas in May 2013. After a five-day trial, the jury returned a verdict in favor of the Rulas. The Lewises appealed. Finding sufficient evidence in support of the verdict, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     In March 2007, the Lewises purchased the subject home in Bridgewater subdivision

located at 118 Bridgeview Circle, Ridgeland, Mississippi. At the time of purchase, the home was still under construction. After construction was completed, the Lewises moved into the home in July 2007. Approximately four years later, in October 2011, the Lewises placed their home for sale on the market. During the four years between the construction and listing of the subject home, the Lewises had numerous repairs done on a parapet wall. Specifically, the Lewises had an individual named Jack McCabe (of Sundance Homes LLC) install an iron brace on the subject parapet wall to prevent the bricks from cracking and to tighten up or stabilize the parapet wall. McCabe also repaired leaks in the parapet wall and in the roof-to-parapet wall connection. When the Lewises listed the home, they signed a disclosure statement. The disclosure statement specifically advised that "the property condition disclosure statement is NOT intended to become a part of any contract between the transferor(s) and the transferee(s) and is for 'disclosure' purposes only." Additionally, the Lewises partially completed a disclosure statement, leaving some relevant portions blank. When asked if they had "experienced any problems with the walls, siding of windows," the Lewises provided no response. When asked about any past or current "leaks, water back-ups, or problems with the roof," the Lewises provided no response. When asked if the roof had been repaired or replaced during ownership, the Lewises answered "no."

¶3.     On April 4, 2013, the Lewises and the Rulas entered into a contract for the purchase of the subject home, which contained a home-inspection contingency clause. On April 15, 2013, the Rulas had a home inspection performed by Gary McFarland of a company named

2

"CHI." No defects or deficiencies were noted, structural or otherwise, in the report. No other inspections were performed. The Lewises and Rulas agreed the home inspection contingency would be removed once a list of items for repairs was completed in a manner satisfactory to the Rulas. McCabe completed the listed repairs. On May 1, 2013, the parties signed a declaration of acceptance, wherein the Rulas accepted the home "as to the condition of the house, other improvements, fixtures and equipment, decoration, suitability and readiness for use as our home." The parties closed on May 1, 2013. Sometime in the fall of 2013, while having a gazebo built on the property, the Rulas were advised there was a structural defect in the parapet wall. The Rulas hired a contractor to remove and replace the cracked and leaning parapet wall at a cost of $75,000. On August 7, 2015, the Rulas filed suit against the Lewises for intentional and negligent misrepresentation, claiming that the Lewises failed to disclose a known structural defect in the parapet wall. The Rulas sought damages in the amount of $75,000, reflecting the cost of repairs, and $160,000 in diminution of value relating to the parapet wall. Prior to trial, the Lewises filed a motion for summary judgment, which the trial court denied. After a five-day jury trial in August 2018, the Lewises moved for a directed verdict at the close of the Rulas' case-in-chief. The trial court denied the motion. The jury returned a verdict in favor of the Lewises as to intentional misrepresentation and in favor of the Rulas as to the issue of negligent misrepresentation. The jury assessed damages in the amount of $235,000 ($75,000 for the cost of repairs and $160,000 for the diminution of value). The jury assigned the Rulas 13% of fault and the Lewises 87% of fault.

3

The trial court entered a final judgment against the Lewises in the net amount of $204,450, in accordance with the percentages of fault allocated by the jury. The Lewises filed a motion for judgment notwithstanding the verdict (JNOV), which the court denied. The Lewises timely appealed.

## STANDARD OF REVIEW

¶4. "[T]his Court applies de novo review of a trial court's denial of a motion for JNOV." *Mine Safety Appliance Co. v. Holmes*, 171 So. 3d 442, 446 (¶8) (Miss. 2015). "A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if, viewing the evidence in a light most favorable to the verdict, there is substantial evidence to support the verdict." *Id*. (internal citations omitted); *accord Cope v. Thrasher*, 231 So. 3d 989, 993 (¶5) (Miss. 2017).

## DISCUSSION

¶5. The dispositive issue on appeal is whether an "as-is" clause relieves a seller, in this case the Lewises, of statutory disclosure requirements and resulting liability. The Lewises argue the "as-is" clause exempts them from any liability regarding disclosures pertaining to the condition of the property. Further, they argue the "as-is" clause removes any liability stemming from any failure to disclose and/or comply with Mississippi Code Annotated sections 89-1-501 to 89-1-523 (Rev. 2011).

¶6. It is undisputed by the parties that Mississippi Code Annotated section 89-1-501 requires that the disclosure statement be made. There is also a requirement of good faith

4

pursuant to Mississippi Code Annotated section 89-1-511, which states that "[e]ach disclosure required by [s]ections 89-1-501 through 89-1-523 and each act which may be performed in making the disclosure, shall be made in good faith." Failure to disclose as required results in liability as outlined in Mississippi Code Annotated section 89-1-523 as follows: "However, any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of [s]ections 89-1-501 through 89-1-523 shall be liable in the amount of actual damages suffered by a transferee." There are limitations with regard to liability for the failure to disclose. Mississippi Code Annotated section 89-1-505(1) "states that the transferor shall not be liable 'if the error, inaccuracy or omission was not within the personal knowledge of the transferor or that listing or selling agent.'" *Williams v. Estate of Morrison ex rel. Morrison*, 969 So. 2d 132, 135 (¶8) (Miss. Ct. App. 2007). This Court went on to say that "section 89-1-509 establishes the format and contents required in the disclosure statement. In pertinent part the statement says 'TO THE SELLER: Please complete the following form, including any past history of problems, if known.'" *Id*. (emphasis omitted). Regarding application of the law, this Court held that "the seller is only under a duty to disclose information that he or she has personal knowledge of and cannot be liable for defects or conditions that he or she was not personally aware of at the time of the sale." *Id*.

¶7.    The Lewises argue that the "as-is" clause relieves them of any duty to disclose, or at the very least from any resulting liability. Our Supreme Court has specifically said that "Mississippi does not have much caselaw on the force and effect of an 'as-is' clause."

5

*Stribling Inv. LLC v. Mike Rozier Constr. Co.*, 189 So. 3d 1216, 1222 (¶21) (Miss. 2016). In

*Stribling*, the Supreme Court addressed the issue currently before this Court: does an "as-is"

clause have any effect on a seller's affirmative statutory duty to make disclosures regarding

the subject property? The Supreme Court held that "the affirmative duty to disclose defects

within the [property] to prospective buyers would still apply, regardless of an 'as-is' clause."

*Id*. at (¶22). The Supreme Court further explained that "[a]n 'as-is' clause may waive a

warranty, but only *after* the satisfaction of the affirmative duty to disclose [property]

defects." *Id.* at 1223 (¶23).

¶8.     In the instant case, the Lewises failed to satisfy the statutory requirements concerning

disclosure. The Lewises failed to provide a completed disclosure statement, as reproduced

below:

> D.     ROOF:
>        Has the roof been replaced or repaired during your ownership?
>        [No is checked]
>        During your ownership have there been any leaks, water
>        backups, or problems with the roof? [Answer left blank]
> E.     LAND AND SITE DATA:
>        FOR ANY REASON has any portion of the residence ever
>        suffered water damage? [No is checked]
> F.     ADDITIONS/REMODELS:
>        During your period of ownership, have there been any additions,
>        remodeling, structural changes or alterations to the residence?
>        [No is checked]
> G.     STRUCTURE/WALLS/WINDOWS
>        Have you ever experienced ANY problems with walls, siding or
>        windows? [Answer left blank]
>        MISCELLANEOUS:
>        Are you aware of any hidden defects or needed repairs about
>        which the purchaser should be informed PRIOR to their

purchase? [No is checked]

The Lewises failed to comply with the statutory requirements concerning disclosures by failing to disclose the known repair history or even providing responses to the relevant and potentially harmful questions on the subject disclosure form. It is worth noting the Lewises answered every question on the disclosure form except the ones that would have potentially disclosed the subject defect, or at the very least satisfied their duty to disclose pursuant to the statute.

¶9. Contrary to their disclosures, it is undisputed the Lewises had work done on and around the subject parapet wall and roof. The Lewises admit this in their brief. The Lewises had numerous relevant repairs done to the subject parapet wall and surrounding areas which should have been disclosed. McCabe, the Lewises' contractor, testified that he performed repairs to the parapet wall. McCabe said he had to install an iron brace to the parapet wall to prevent cracking. Additionally, McCabe testified he repaired leaks in the parapet wall and in the roof-to-wall connection above the parapet wall. The contractor hired by the Rulas to demolish and repair the parapet wall testified there was extensive water damage in and around the subject wall. Additionally, Jason McQueen, a structural engineering expert hired by the Rulas, testified he noticed significant water damage while observing the demolition and repair. McQueen further testified that the problems the Lewises consistently had repaired were all symptoms of a parapet-wall defect.

¶10. It cost the Rulas $75,000 to fix the defective parapet wall and related damage.

Additionally, the Rulas provided testimony that they suffered a diminution of value totaling $160,000 due to the defective parapet wall and related issues. The Lewises offered no evidence at trial to challenge the cost of repairs or that the work was required.

¶11.    The Rulas agree that the sales contract between the parties contained an "as-is" clause, which stated in part that "[w]e understand that, with the acceptance of the Deed, and except for misrepresentation or fraud, Seller(s) will have no further responsibility or liability for any repairs to the property." The Lewises in essence argue the "as-is" clause absolves them of any liability. In support of their contention, the Lewises cite and rely heavily upon two cases: *Stonecipher v. Kornhaus*, 623 So. 2d 955 (Miss. 1993), and *Crase v. Hahn*, 754 So. 2d 471 (Miss. Ct. App. 1999). Both cases are readily distinguishable from the one currently before this Court.

¶12.    In *Stonecipher v. Kornhaus*, 623 So. 2d 955 (Miss. 1993), a tree limb fell on the plaintiff, who was 7½ months pregnant, causing serious injury to her and requiring an emergency cesarean section. *Id*. at 958-59. The child was permanently injured as a result of the injuries sustained. *Id*. at 959. The Plaintiffs in *Stonecipher* were aware of the potential defect in the tree limb, as they had requested the sellers to repair the tree prior to closing. *Id*. at 958. The tree was not repaired, but the plaintiffs continued with the closing anyway. *Id*. Additionally, the plaintiffs in *Stonecipher* were advised of the potential defect in the tree when the workers they had hired inspected the tree and advised them of the potential defect. *Id*. Specifically, the plaintiffs were told the limb was hollow and needed to be cut

8

immediately. *Id*. at 958-59.

¶13.    In *Crase v. Hahn*, 754 So. 2d 471 (Miss. 1999), the buyers were told at closing that the house had previously been cut in half. *Id*. at 474. The seller gave the Crases the option not to proceed with the purchase and refund the $5,000 earnest money. *Id*. The Crases proceeded with the purchase fully informed of the risks. *Id*.

¶14.    The case currently before this Court does not lineup factually with either authority cited above. The Lewises were fully aware that the subject parapet wall had issues because they had paid a contractor to repair numerous problems prior to the sale of the home to the Rulas. At trial, no testimony was offered to refute actual knowledge on the part of the Lewises about prior repairs and issues specifically related to the parapet wall. The Lewises failed to disclose their knowledge to the Rulas, and because of it, the Rulas were damaged. Not answering questions on the disclosure does not equate to lack of misrepresentation, especially in light of the testimony and evidence offered at trial.

¶15.    The Lewises failed to satisfy their duty to disclose, and as the Supreme Court stated in *Stribling Investments LLC v. Mike Rozier Construction Co.*, 189 So. 3d 1216, 1222 (¶22) (Miss. 2016), the presence of an "as-is" clause does not absolve sellers like the Lewises of that duty to disclose. Additionally, the Lewises do not get to avail themselves of the protections enumerated in Mississippi Code Annotated section 89-1-505(1) and discussed in *Williams v. Estate of Morrison ex rel. Morrison*, 969 So. 2d 132, 135 (¶8) (Miss. Ct. App. 2007), because the information and subject of their omissions were within their personal

9

knowledge. There were issues of fact for the jury to consider, and the jury considered them along with the evidence and testimony at trial prior to reaching the verdict. The denial of the Lewises' motion for summary judgment was proper, and the jury's verdict was supported by substantial evidence. As such, the judgment of the trial court is affirmed.

¶16.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.  J. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  C. WILSON, J., NOT PARTICIPATING.**